**In re NEW YORK TRAP ROCK COR-PORATION, Lone Star Industries, Inc., et al., Debtors.**

**LONE STAR INDUSTRIES, INC., Plaintiff,**

v.

**RANKIN COUNTY, MISSISSIPPI BOARD OF SUPERVISORS, Defendant.**

No. 93–5076A.
Bankruptcy Nos. 90 B 21276 through 90 B 21286, 90 B 21334, 90 B 21235.

United States Bankruptcy Court, S.D. New York.

April 5, 1993.

Proskauer Rose Goetz & Mendelsohn, New York City, for Lone Star Industries, Inc.

Townley & Updike, New York City, for Rankin County, Mississippi Bd. of Supervisors.

Ross F. Bass, Jr., Phelphs, Dunbar, Marks, Claverie & Sims of Counsel to Townley & Updike, Jackson, MS.

## DECISION ON MOTION FOR A TEMPORARY RESTRAINING ORDER ENJOINING THE RANKIN COUNTY MISSISSIPPI BOARD OF SUPERVISORS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Lone Star Industries, Inc., the Chapter 11 debtor in possession, has moved for a temporary restraining order enjoining the Rankin County Mississippi Board of Supervisors (the "Board of Supervisors") from continuing a lawsuit in the United States District Court for the Southern District of Mississippi seeking monetary damages from the debtor under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* The debtor has also commenced an adversary proceeding in this court seeking a permanent injunction on substantially similar grounds as follows: (1) The Board of Supervisors has failed to file a timely proof of claim for the damages claimed in the CERCLA action and is now barred from recovering on its claim; (2) The Board of Supervisors is not authorized to use governmental police power to assert claims under CERLA; (3) When the Rankin County Economics District (the "Economic District") purchased the property in question from the debtor, the Economic District agreed to indemnify and hold the debtor harmless from any environmental claims related to the purchased property; and (4) Continuation of the Mississippi action would require the debtor to defend itself at considerable cost and expense, and would distract the debtor's reorganizational effects, whereas the Board of Supervisors may not succeed on its CERCLA claim against the debtor.

## FINDINGS OF FACT

1. On December 10, 1990, the debtor, Lone Star Industries, Inc., filed with this court its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued to manage its properties and operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. On April 27, 1982, the debtor acquired all the stock of Marquette Cement Manufacturing Company ("Marquette Company"), which was then merged into the debtor in March of 1987. The debtor thereby acquired title to approximately 1,200 acres of property located partially in the City of Brandon, Rankin County, Mississippi (the "Marquette property"), on which there was conducted a limestone mining and cement manufacturing operation.

3. In the Fall of 1989, the Economic District purchased the Marquette property from the debtor for the purpose of creating an industrial park for Rankin County. The purchase price was $1,500,000.00. The Economic District agreed to purchase the property "as is," without any express warranties as to the condition of the property. Pursuant to the contract, the Economic District could make any inspections or tests it wished and if the Economic District discovered any environmentally unacceptable conditions, the debtor agreed that the Economic District could cancel the contract within 60 days after execution.

4. By letter dated November 3, 1989, the Economic District, by its attorney, Michael P. Younger, informed the debtor that the Economic District had conducted studies of the Marquette property pursuant to the contract and found no environmental conditions that would void the contract.

5. In paragraph 5 of the contract, the Economic District agreed to indemnify and hold the debtor harmless after the closing of the contract from any claims or liabilities resulting from the existence or effect of any environmental conditions on the Marquette property.

6. The Economic District made payments to the debtor pursuant to the contract of sale as follows: $15,000.00 on execution of the contract, $360,000.00 at the closing, $487,500.00 on November 6, 1990 and $450,000.00 on November 6, 1991. No further payments were made. The Economic District did not pay the sum of $412,500.00 to the debtor on November 6, 1992, as required.

7. On February 10, 1993, the debtor filed an adversary complaint in this court against the Economic District for the balance of the money owed to the debtor under the Marquette property contract.

8. On February 17, 1993, the Board of Supervisors filed a complaint against the debtor and Jackson Oil Products Company in the United States District Court for the Southern District of Mississippi, seeking monetary damages for "response costs" and "damage to natural resources" under CERCLA, 42 U.S.C. § 9601 et seq., allegedly arising from dumping in 1969 through 1971, by Jackson Oil Products Company, with permission of the Marquette Company. The complaint alleges that oil sludge mixed with cement kiln dust was dumped on sites and abandoned limestone quarries on the Marquette property.

9. On July 24, 1991, this court entered an order setting October 15, 1991 as the bar date for the filing of all claims against the debtor in this Chapter 11 case. The Board of Supervisors did not file a proof of claim in this case before the October 15, 1991 bar date.

10. Notice of the bar date was given by the debtor by first class mail to the environmental authorities of the federal government and all fifty states, including the Mississippi Department of Environmental Quality and the Mississippi Bureau of Pollution Control. All potential creditors were also advised of the bar date by notice of publication by August 5, 1991, in the national editions of the Wall Street Journal, The New York Times, The Memphis Commercial Appeal, The Nashville Banner, The Houston Chronicle, The St. Louis Post Dispatch, the Miami Herald, The Dallas Times Herald, the Norfolk Ledger Star, The Richmond Times Dispatch and ten other major newspapers.

11. The debtor also gave notice of the bar date by first class mail on August 5, 1991 to the Rankin County Chamber of Commerce, which shared the same post office box with the Economic District. There was no proof that the plaintiff in the Mississippi action, the Board of Supervisors, also shared the same post office box with the Rankin County Chamber of Commerce.

12. The Board of Supervisors first learned of the existence of hazardous waste on the Marquette property in May or June of 1992 when it commenced excavations for the Rankin County Building in the proposed industrial park located on the Marquette property. Thereafter, in August and September of 1992, oil sludge pits were discovered on the property. Until this discovery, neither the debtor nor the Board of Supervisors had notice that CERCLA response costs might be incurred for removing hazardous conditions at the Marquette property.

## DISCUSSION

The debtor seeks a preliminary injunction staying the continuation of the Board of Supervisors' Mississippi District Court action to recover response costs under CERCLA. The debtor reasons that the Board's failure to file a timely proof of claim in this case bars any recovery for the CERCLA claims asserted in the Mississippi District Court and, therefore, defending the CERCLA action would be a needless waste of the estate's assets. The Board of Supervisors responds that it is not barred from asserting a CERCLA claim against the debtor for several reasons. First, it is argued that its CERCLA claim is a post-petition claim. Second, the Board of Supervisors argues that the debtor did not give it actual notice of the bar date. Third, under the facts of this case, it is asserted that notice by publication did not constitute adequate notice to the Board of Supervisors.

■ Initially, it should be noted that the automatic stay imposed under 11 U.S.C. § 362(a) is not implicated because governmental actions under CERCLA to recover costs in response to completed environmental violations are not stayed when an alleged responsible party files a bankruptcy case. *City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir.1991); *United States v. Nicolet*, 857 F.2d 202 (3d Cir.1988). Such actions are regarded as subject to the exception to the automatic stay set forth in 11 U.S.C. § 362(b)(4). Even though governmental police power actions may continue against the debtor, any money judgment that the Board of Supervisors might obtain in such action may not be enforced against the debtor without relief from the automatic stay. This is so because the enforcement of money judgments is excluded from the exception expressed in 11 U.S.C. § 362(b)(5). Moreover, 11 U.S.C. § 362(a)(6) specifically stays any act to collect a prepetition claim against the debtor. Thus, such law suits simply result in liquidating the claim and eliminate the need to establish or estimate such claim in the bankruptcy court. The debtor argues that the Board of Supervisors lacks authority to assert CERCLA claims because that privilege lies with the Mississippi Department of Environmental Quality. However, this issue as to the Board's standing to commence the CERCLA action is one which should be determined by the United States District Court for the Southern District of Mississippi, where the action is pending, and not as a collateral determination in this court.

### *Status of the Claim*

■ The evidence reveals that Rankin County first became aware of oil sludge contamination on the Marquette property in the summer of 1992, when it commenced excavations for the construction of an industrial park on the property. Because this event occurred after the commencement of the debtor's case on December 10, 1990, and after the October 15, 1991 deadline date for filing proofs of claim, as expressed in the bar order dated July 24, 1991, the Board argues that its claim is a post-petition claim. Nonetheless, the Board concedes in its complaint filed in the Mississippi action that the alleged oil sludge and hazardous wastes were dumped and released on the Marquette property by the Jackson Oil Products Company decades before the commencement of the debtor's Chapter 11 case. It is now settled that a CERCLA claim for response costs is a dischargeable prepetition claim when a release or threatened release of hazardous wastes has ·occurred prepetition. *In re Chateaugay Corporation*, 944 F.2d 997, 1005 (2d Cir.1991). For purposes of considering the debtor's motion for a preliminary

injunction, the Board's CERCLA claim in the Mississippi action must be regarded as a prepetition claim.

### Notice of the Bar Date

■ The debtor had no knowledge of any environmental claim or potential environmental claim that the Board of Supervisors might assert when it obtained a bar order fixing October 15, 1991 as the last day to file proofs of claim in this Chapter 11 case. The Economic Development District, and not the Board of Supervisors, was the party to the 1989 contract pursuant to which the debtor agreed to sell the Marquette property to the Economic Development District of Rankin County, Mississippi. The debtor did give actual notice to the Mississippi Department of Environmental Quality and to the Rankin County Chamber of Commerce. Neither entity filed a proof of claim in this case. The Rankin County Chamber of Commerce is a private, not-for-profit organization organized and run by local businessmen and is not a governmental body politic. Notice of the bar date given to the Rankin County Chamber of Commerce is not the equivalent of actual notice to the Board of Supervisors or to the Economic Development District, no matter how closely associated the members of one organization are with those of the others.

■ The debtor did not give notice of the bar date to the Economic Development District, the other party to the contract, pursuant to which the debtor sold the Marquette property. The debtor maintains that it had no reason to give notice of the bar date to either the Economic Development District or to the Board of Supervisors because it had no knowledge of any environmental claims with respect to the Marquette property. Indeed, under the terms of the contract, the Economic Development District agreed that it had full and complete knowledge that the property might contain environmental hazards or conditions. The contract allowed the Economic Development District to make whatever inspections, surveys or tests as to the Marquette property it wished. Thereafter, the attorney for the District informed the debtor that after conducting studies of the property, the District found no environmental conditions that would void the contract. The District also agreed to indemnify the debtor after the closing from any environmental claims or liabilities. When a debtor has no knowledge of a claim, the debtor has no obligation to search out potential claims and mail notice to the potential claimants. *In re Best Products Co. Inc.*, 140 B.R. 353, 357 (Bankr.S.D.N.Y.1992). In such case, notice by publication that is reasonably calculated to reach unknown creditors constitutes sufficient notice to bar untimely claims. *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 974 F.2d 775, 788 (7th Cir.1992). On the other hand, if a debtor knows or should know, of its potential liability to a specific creditor, that creditor is a known creditor and is entitled to actual notice by mail of the claims bar date in order to satisfy constitutional due process requirements. *In re Thomson McKinnon Securities Inc.*, 130 B.R. 717, 720 (Bankr.S.D.N.Y.1991).

■ It might be argued that the debtor was aware that it was a party to a real estate contract with the Economic Development District in which environmental hazards were referred to, so that notice should have been given to the Economic Development Board, especially if the debtor chose to give actual notice to the environmental authorities of fifty states. However, the Economic Development District is not the same governmental unit as the Board of Supervisors, which is the plaintiff in the Mississippi CERCLA action. Accordingly, the debtor cannot be faulted for not giving actual notice of the bar date to the Board of Supervisors when it had no previous dealings with this governmental unit and when it had no actual notice of any environmental claims with respect the Marquette property.

In these circumstances, the Board of Supervisors should be bound by the bar date unless it can show it is entitled to file a late CERCLA claim because its failure to file timely a proof of claim was the result of "excusable neglect," as expressed in Federal Rule of Bankruptcy Procedure

9006(b)(1). The excuse that the Board of Supervisors might assert relates to the fact that it did not learn of any environmental hazards with respect to the Marquette property until the Summer of 1992, when it commenced excavations for the construction of an industrial park. Until then, neither the debtor nor the Board of Supervisors had actual notice that response costs might be claimed for removing hazardous conditions at the Marquette property. Presumably, until news of this situation developed, both the debtor and the Board of Supervisors assumed that no environmental expense claims existed with respect to the Marquette property. A strict and inelastic application of the doctrine of excusable neglect in this case would penalize the Board of Supervisors for failing to file a timely CERCLA claim when the existence of the CERCLA claim did not become known until after the bar date had passed.

The United States Supreme Court has recently ruled that in determining excusable neglect under Rule 9006(b)(1), the bankruptcy court must apply its broad equitable powers in balancing the interests of the affected parties, especially where the failure to file timely is due to circumstances beyond the control of the filer. *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Manifestly, the Board of Supervisors could argue that its failure to file a timely CERCLA claim was beyond its control, in that it did not receive notice of the bar date and it did not learn of the existence of a CERCLA claim until after the bar date expired.

The Board of Supervisors may draw comfort from the following words of the Supreme Court in the *Pioneer Investment* case:

> ... Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

> ....

> ... In overseeing this latter process [Chapter 11], the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization.

> ....

> This history supports our conclusion that the enlargement of prescribed time periods under the "excusable neglect" standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer.

*Pioneer Investment,* at —— ——, 113 S.Ct. at 1490–1496.

Accordingly, in light of the recent Supreme Court case it cannot be said with certainty that the Board of Supervisors' failure to file a timely CERCLA claim in this case will bar any recovery for the CERCLA claim asserted in the Mississippi District Court. Similarly, it cannot be concluded that defending the CERCLA action would be a needless waste of the estate assets to justify the issuance of a preliminary injunction because if the Board of Supervisors should succeed in its CERCLA action and obtain a money judgment against the debtor, such judgment might not be precluded from consideration in this case by the bar order.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (B).

2. It cannot be concluded that defending the Board of Supervisors' CERCLA action in the United States District Court for the Southern District of Mississippi would be a needless waste of the estate assets of this debtor to justify the issuance of a preliminary injunction staying the continuation of such action.

3. The debtor's motion for a preliminary injunction is denied.

648

SETTLE ORDER on notice in accordance with the foregoing.