In re NEW YORK TRAP ROCK COR-
PORATION, Lone Star Industries,
Inc., et al., Debtors.

Bankruptcy Nos. 90 B 21276
through 90 B 21335.

United States Bankruptcy Court,
S.D. New York.

May 3, 1993.

Townley & Updike, New York City, for Rankin County, Mississippi Bd. of Supervisors.

Proskauer Rose Goetz & Mendelsohn, New York City, for debtors.

Wachtell, Lipton, Rosen & Katz, New York City, for creditors' committee.

## DECISION ON MOTION FOR AN ORDER EXTENDING TIME TO FILE CLAIM

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Rankin County, Mississippi, Board of Supervisors (the "Board") has moved for an order pursuant to Federal Rules of Bankruptcy Procedure 3003(c)(3) and 9006(b)(1), extending its time to file a proof of claim against the Chapter 11 debtor, Lone Star Industries, Inc. The late claim is based on potential recovery costs that may be incurred by the Board under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, which is also the subject of a lawsuit pending in the United States District Court for the Southern District of Mississippi brought by the Board against the debtor.

The debtor opposes the Board's motion on the ground that the Board did not act in good faith by delaying its filing of a proof of claim for approximately one year after it had actual knowledge of the hazardous substances on the property purchased from the debtor. Additionally, the debtor argues that the Board should have known of the existence of the hazardous substances on October 22, 1991, when an engineering report revealed to the Board that there was a possible contamination of petroleum refining sludge on the property in question.

## FINDINGS OF FACT

1. On December 10, 1990, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and continued in operation and management of its cement products business as a debtor in possession. On July 24, 1991, this court entered an order setting a bar date for filing claims as October 15, 1991.

2. On February 17, 1993, the Board commenced a suit against Jackson Oil Products Company ("Jackson") (a predecessor user of the real estate in question) and the debtor, as the vendor of the real estate in question, in the United States District Court for the Southern District of Mississippi seeking environmental response costs under CERCLA.

3. In 1989, the Rankin County Economic Development District (the "District") purchased from the debtor approximately 1233 acres of land in Rankin County, Mississippi. The property had previously been used by Jackson, which had dumped acid and oil sludge in pits and abandoned limestone quarries on the property in question.

4. The District was alerted to the problem in the contract of sale (the "Contract") with the debtor, which provided in essence that the property might contain environmental hazards and conditions including cement kiln dust, quarry materials, industrial refuse and other hazardous waste. Pursuant to the Contract which the parties signed on August 31 and September 21, 1989, respectively, the District, as purchaser of the real estate, was allowed to make whatever inspections, surveys or tests of

the property it wished, and, if the District discovered any environmentally unacceptable conditions, the debtor agreed to cancel the Contract within sixty days of execution of the Contract. By letter dated November 3, 1989, the District's attorney advised the debtor that, based on studies conducted by the District, nothing was found that would void the Contract. Apparently, the District did not conduct any studies, but proceeded to go ahead with the purchase of the property in question. Additionally, pursuant to the terms of the Contract, the District agreed to indemnify and hold the debtor harmless from any claims or liabilities resulting from the existence or effect of any environmental conditions on the acquired real estate.[1]

5. The District made all but the final payments to the debtor for the purchase of the property in accordance with the terms of the Contract. The District did not pay the final sum of $412,500.00 to the debtor on November 6, 1992, as required.

6. On February 10, 1993, the debtor commenced an adversary proceeding in this court against the District for the balance of the Contract price. The Board, as distinguished from the District, then filed a CERCLA complaint against the debtor and Jackson in the United States District Court for the Southern District of Mississippi on February 17, 1993.

7. The Board first obtained actual knowledge of the existence of hazardous waste on the property in question in May or June of 1992, when it commenced excavations for the construction of an office building on the property. In August and September of 1992, oil sludge pits were discovered on the property. Until these discoveries, neither the debtor nor the Board had actual notice that CERCLA response costs might be incurred for removing hazardous conditions from the property in question.

8. By motion dated March 9, 1993, the debtor sought a preliminary injunction restraining the Board from continuing its CERCLA lawsuit in the United States District Court in Mississippi on the ground that the defense of such action would be a waste of the debtor's assets. In a written decision dated April 5, 1993, this court held that it could not be concluded that defending the District Court action in Mississippi would be a needless waste of the estate's assets to justify the issuance of a preliminary injunction. *Lone Star Industries, Inc. v. Rankin County, Mississippi, Board of Supervisors*, 153 B.R. 642 (Bankr.S.D.N.Y.1993).

9. On the morning of the first hearing date on the preliminary injunction application on March 19, 1993, the Board filed a post-petition administrative proof of claim. However, this court ruled that the Board's claim for a prepetition release of hazardous wastes must be regarded as a prepetition claim. *Id.* The court also ruled that it could not be said with certainty that the Board's failure to file a timely CERCLA claim would bar any recovery for the CERCLA claim asserted in the District Court in Mississippi, citing *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

10. In light of the foregoing, the Board filed its Notice of Motion, dated April 15, 1993, for an order permitting it to file a late proof of claim with respect to the CERCLA claim which is the subject of the District Court action in Mississippi. The debtor maintains that such late filing should not be accepted as "excusable neglect."

## DISCUSSION

### *Allowability*

■ At the outset, it should be noted that 42 U.S.C. §§ 9607(a) and 9613(f) per-

---

1. The Contract states:
   Seller does not warrant the condition of the subject property and Purchaser hereby agrees to accept delivery and possession of said property in its "as is" condition and agrees to release, relieve and hold harmless Seller from any and all claims, causes of action, lawsuits, obligations or other liabilities resulting from the existence, presence or effect of any or all environmentally questionable conditions from and after the date of closing.
   *Contract,* at 4.

mit a private party to recover from a responsible party response costs it incurs in conducting cleanup pursuant to CERCLA. *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992); *Dant & Russell, Inc. v. Burlington Northern Railroad Co.* (*In re Dant & Russell, Inc.*), 951 F.2d 246, 248 (9th Cir.1991); *Syntex Corp. v. The Charter Company* (*In re Charter Co.*), 862 F.2d 1500, 1503 (11th Cir.1989). Whether or not a contingent response claim is allowable in bankruptcy depends, in part, on a finding that it is not a claim for reimbursement or contribution which is disallowable under 11 U.S.C. § 502(e)(1)(B).[2] A contingent CERCLA claim that is not a direct claim between the parties but depends upon the co-liability of the parties, as to a third party or to the Environmental Protection Agency ("EPA"), is a disallowable claim for reimbursement or contribution. *Dant & Russell,* 951 F.2d at 249; *Charter.,* 862 F.2d at 1503; *In re Eagle–Picher Industries, Inc.,* 144 B.R. 765, 769 (Bankr.S.D.Ohio 1992); *In re Hemingway Transport, Inc.,* 105 B.R. 171, 174 (Bankr. D.Mass.1989). *See In re Cottonwood Canyon Land Co.,* 146 B.R. 992 (Bankr.D.Colo. 1992) (disallowable claim for contribution or reimbursement existed even though EPA not involved). On the other hand, when reimbursement or contribution is not a factor, a direct contingent claim by the current owner of property for CERCLA past and future response costs is not disallowed by 11 U.S.C. § 502(e)(1)(B). *In re Harvard Industries, Inc.,* 138 B.R. 10 (Bankr.D.Del.1992).

■ In the instant case, the Board does not seek to recover sums owed under CERCLA to a third party, such as the EPA, but instead seeks to recover sums it has expended and will expend in the future to remedy the hazardous waste conditions on the property acquired from the debtor.

**2. § 502. Allowance of claims or interests.**

. . . .

(e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, that claim of a creditor, to the extent that—

Therefore, 11 U.S.C. § 502(e)(1)(B) will not bar the Board's proposed contingent claim because there does not appear to be any multiple liability on the debtor's part for the contingent claim asserted by the Board. *Dant & Russell,* 951 F.2d at 248; *In re Allegheny International, Inc.,* 126 B.R. 919 (W.D.Pa.1991), *aff'd without opinion,* 950 F.2d 721 (3d Cir.1991); *Harvard Industries,* 138 B.R. at 13.

### *Standing*

■ It has been argued that the Board does not have standing to assert a response claim against the debtor because the Board is neither the federal nor the state agency charged with enforcing environmental laws. This point overlooks the fact that the Board is the governing municipality in control of the property through the District, which it created for the purpose of acquiring assets such as the property in question. Having undertaken to arrange for the remediation of the potential hazardous condition, the Board has "arranger" liability for the disposition of the hazardous waste pursuant to 42 U.S.C. § 9607(a)(3), which provides:

**§ 9607. Liability**
**(a) Covered persons; scope, recoverable costs and damages; interest rate; "comparable maturity" date**

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

. . . .

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or oper-

. . . .

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

11 U.S.C. § 502(e)(1)(B).

ated by another party or entity and containing such hazardous substances....

42 U.S.C. § 9607(a)(3)

Although the Board is a municipality, it is now clear that municipalities are not exempt from "arranger" liability. *B.F. Goodrich Company v. Murtha*, 958 F.2d 1192, 1198 (2d Cir.1992). Therefore, the Board has standing to claim reimbursement from the debtor for the Board's contingent liability for response costs, should it be determined in the Board's district court action against the debtor that the property is a facility encumbered by hazardous substances.

## Late Claim

■ The issue is not whether "excusable neglect" within the meaning of Federal Rule of Bankruptcy Procedure 9006(b)(1) applies with respect to a prepetition claim that was not filed before the bar date. The Board in this case did not freely ignore a court-ordered deadline in the hopes of winning a permissive reprieve under Federal Rule of Bankruptcy Procedure 9006(b)(1). The Board did not obtain actual knowledge of the hazardous condition on the property in question until May and June of 1992, which was after the bar date of October 15, 1991. Rather, the issue is whether a prepetition claim which first became actually known after the bar date may be filed in a Chapter 11 case, with leave of court, approximately one year after such actual notice was obtained.

■ The determination as to granting permission to file a late claim is an equitable one, which includes the consideration of all relevant factors, including: (a) the danger of prejudice to the debtor, (b) the length of the delay and its potential impact on judicial proceedings, (c) the reason for the delay, including whether it was within the reasonable control of the movant and (d) whether the movant acted in good faith. *Pioneer Investment Services*, — U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

### Prejudice to the Debtor

In the instant case the debtor filed a plan of reorganization on April 12, 1993, one day before the Board made its motion for leave to file a late claim. The debtor previously negotiated with its creditors' committee and with its equity holders' committee and has proposed a plan and disclosure statement on the basis of the financial posture of this case. The debtor did not factor in the potential multi-million dollar late claim which the Board seeks permission to file. The creditors' committee understandably opposes the Board's motion because its support of the debtor's proposed plan was based on figures which did not include the belated claim now proposed by the Board. The debtor will obviously be prejudiced by the filing of the late claim because such filing, if allowed, will generate further reconsideration by the creditors and equity holders and will frustrate the debtor's hopes for a prompt confirmation of its plan.

### Delay and its Potential Impact

The proposed late claim is contingent. Its liquidation must await the conclusion of the current lawsuit brought against the debtor and Jackson in the United States District Court for the Southern District of Mississippi. This case was recently commenced by the Board in February of 1993. Whether or not the Board's claim is valid and, if so, to what extent, will depend upon a future judgment rendered in the District Court in Mississippi. This delay will have a disruptive effect on the reorganization proceeding because it will put on hold the confirmation of the debtor's proposed plan.

### The Reason for the Delay and its Control

The Board may have had reason to believe that there was an environmentally hazardous condition on the property in question on October 22, 1991, when it received a report from Waggoner Engineering Inc., which prepared an environmental audit for the Board. However, the Board had actual notice of the existence of acid oil sludge on the property in May and June of 1992. The Board also knew at this time

that the debtor was in a Chapter 11 proceeding because the Board members learned of the debtor's Chapter 11 case after reading the Wall Street Journal shortly after the case was filed. Nonetheless, the Board delayed filing any proof of claim and elected instead to commence a lawsuit against the debtor in the United States District Court for the Southern District of Mississippi in February of 1993, approximately nine months after receiving actual notice of the existence of the potentially hazardous condition on the property in question.

After the debtor sought to restrain the Board from proceeding with its district court litigation, the Board again chose not to seek leave of this court for the filing of a prepetition contingent CERCLA claim. Instead, the Board filed a post-petition administration priority claim on March 21, 1993. Prior permission from this court was not required for this post-petition administration priority claim because it was not precluded by the bar date, which dealt with prepetition claims. It was only after the Board realized that this strategy would not succeed because its CERCLA claim was rooted in prepetition events, that it belatedly took a third procedural approach and sought permission from this court to file a late prepetition contingent CERCLA claim. The delay in filing the proposed claim since May and June of 1992, when the Board first acquired actual notice of the potentially hazardous condition, was solely within the Board's control. Having consciously elected to assert its claim first by way of the district court lawsuit and later by way of a post-petition administration priority claim, the Board now belatedly seeks a third procedural strategy, which suggests that this court should ignore the previous two maneuvers and should exercise its discretion at this late date to allow a belated prepetition contingent CERCLA claim. This delay is inexcusable.

*Good Faith*

There is a significant question as to the Board's good faith assertion of its prepetition CERCLA claim when it originally elected not to participate in the reorganization process and instead, commenced a district court CERCLA lawsuit against the debtor. Thereafter, the Board further delayed seeking this court's permission to file a late claim when it characterized its claim against the debtor as a post-petition administration priority claim which the Board filed with this court on the morning of the return date of the debtor's application for a temporary restraining order.

There is an additional question as to good faith because the District expressly agreed in the Contract to indemnify the debtor against claims, obligations and other liabilities "resulting from the existence, presence or effect of any or all environmentally questionable conditions from and after the date of closing." *Contract*, at 4. While arguably the District and the Board are separate entities, the same five persons acted for both; the Board issued the checks to the debtor in payment for property being deeded to the District, and the Board assumed CERCLA "arranger" liability for the disposal of waste pursuant to 42 U.S.C. § 9607(a)(3), whereas the District is the owner of the property. A municipality may be liable as a potentially responsible party if it arranges for the disposal of hazardous substances. *B.F. Goodrich Co.*, 958 F.2d at 1198 ("CERCLA expressly includes municipalities, states and other political subdivisions within its definition of persons who can incur such liability under § 9607."). The concept of "arranger" liability requires a nexus between the potentially responsible party and the disposal of the hazardous substance, which is the obligation to exercise control over the hazardous waste disposal. *General Electric Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2d Cir.1992). The Board's control and the other factors of joint interest lend weight to the efficacy of the indemnification. That the District issued the indemnity to the debtor, whereas the Board is the claimant, does not detract from the fact that if the Board's late claim is allowed to be filed and is later sustained, the debtor will be able to look to the District for indemnification. The result will be a wash, but additional time, effort and legal fees

will be incurred to reach this result, which will further delay the prompt confirmation of the debtor's proposed plan of reorganization.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. The Board's proposed late prepetition contingent CERCLA claim, if permitted, (a) will prejudice the debtor's efforts for a prompt confirmation of its plan; (b) the delay will have a disruptive effect on the reorganization process; (c) the delay in seeking court permission for the late filing was within the sole control of the Board and is inexcusable. There is a significant question as to the Board's good faith in consciously electing first not to participate in the reorganization process and, instead commencing a CERCLA suit against the debtor in the United States District Court for the Southern District of Mississippi, and then belatedly seeking permission to file a late claim approximately one year after it acquired actual notice of a potentially hazardous condition.

3. In the exercise of the discretion authorized under Federal Rules of Bankruptcy Procedure 3003(c)(3) and 9006(b)(1), the Board's motion for an order extending its time to file a late proof of claim in this Chapter 11 case is denied.

SETTLE ORDER on notice in accordance with the foregoing.