**In re PT–1 COMMUNICATIONS, INC.,**
**PT–1 Long Distance, Inc., and PT–1**
**Technologies, Inc., Debtors.**

Nos. 01–12655–260, 01–12658
260, 01–12660–260.

United States Bankruptcy Court,
E.D. New York.

April 24, 2003.

Angel & Frankel, P.C., By Bruce Frankel, Rochelle R. Weisburg, New York City, for Debtors.

The Commonwealth of Massachusetts Department of Revenue, By James L. O'Connor, Jr., Boston, MA, for Claimant the Commonwealth of Massachusetts Department of Revenue.

McCarter & English, LLP, By Lisa S. Bonsall, Patricia M. Zohn, Newark, NJ, for the Official Committee of Unsecured Creditors for Debtor PT–1 Communications, Inc.

DECISION ON PT–1 COMMUNICATIONS, INC.'S MOTION TO EXPUNGE CLAIM 195 OF THE COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF REVENUE

CONRAD B. DUBERSTEIN, Chief Judge.

PT–1 Communications, Inc., moved to expunge claim 195 of the Commonwealth of Massachusetts Department of Revenue (hereinafter "MDOR"), pursuant to 11 U.S.C. § 502(b)(9). For the reasons set forth herein, the motion is denied.

### FACTS

On March 9, 2001, the telecommunication businesses of PT–1 Communications,

Inc., PT–1 Long Distance, Inc., and PT–1 Technologies, Inc. (hereinafter collectively the "Debtors") filed individual petitions for relief under chapter 11 of the Bankruptcy Code[1] (hereinafter the "Cases"). On March 13, 2001, the Court entered an order directing that the Cases be jointly administered.

On May 9, 2001, the Debtors filed combined Schedules of their assets and liabilities. None of the Debtors filed individual schedules. The caption on the Schedules sets forth the names of each of the three Debtors and does not provide the creditors with any information from which they could ascertain against which of the Debtors they have claims.

Schedule E consists of the names and addresses of unsecured priority creditors and lists MDOR as a creditor of PT–1 Long Distance, Inc., for approximately $90,000, for the calendar year 2000 including a period in 2001 for $10,491.

Schedule F, which contains the names and addresses of unsecured nonpriority creditors, lists MDOR for the exact amount as it is listed in Schedule E as an unsecured priority creditor of PT–1 Long Distance, Inc., for a period in 2001, namely for $10,491, but does not indicate the name of the debtor of which it is a creditor.

Thus, the Schedules do not indicate that MDOR is a creditor of PT–1 Communications, Inc.. Nevertheless, as stated in an affidavit submitted with its memorandum filed in opposition to the within motion, upon receiving notice of the filing of the Cases, MDOR investigated whether any taxes were owed by PT–1 Communications, Inc., and concluded that it owed no taxes to MDOR. (Miller Aff. ¶ 3.)

By order of this Court dated June 5, 2001, the bar date for filing proofs of claim in the Cases was set for August 31, 2001 (hereinafter the "Bar Date"). As indicated in the affidavit of service filed with this Court on July 6, 2001, by Debtors' attorneys, MDOR was sent notice of the aforementioned Bar Date, which MDOR does not contest receiving.

On June 21, 2001, MDOR filed claim 45 against PT–1 Long Distance, Inc., as an unsecured priority claim for $508,653.90 and as a general unsecured claim for $57,000, totaling $565,653.90. In MDOR's objection to the within motion to expunge claim 195, hereinafter described, it states that claim 45 relates to estimated sales tax liability for tax years 1999 and 2000. (Obj.¶¶ 19, 24.) In addition, the claim contains the following statement: "AUDIT IS BEING CONDUCTED, TAX AMOUNTS ARE NOT FINAL."

On May 1, 2002, the Debtors moved to expunge claim 45. MDOR objected to the motion and requested access to the books and records to determine the amount of sales tax owing. On May 30, 2002, upon MDOR's request, this Court directed Debtors' counsel to make available to MDOR the Debtors' books and records relative to MDOR's claims. Debtors' counsel complied with this Court's direction. While in the process of its examination, on or about June 7, 2002, after the Bar Date, MDOR became aware of taxable sales of prepaid phone cards by PT–1 Communications, Inc., when it was given access to a consolidated ledger of PT–1 Long Distance, Inc., and PT–1 Communications, Inc.. (Miller Aff. ¶ 14.)

On September 24, 2002, MDOR filed claim 195, amending claim 45, against PT–1 Communications, Inc./PT–1 Long Distance, Inc., as an unsecured priority claim for $2,398,899.08 and as a general unsecured claim for $579,004.86, totaling

---

1. Title 11 of the United States Code.

$2,977,903.94. In MDOR's objection to the within motion to expunge, MDOR states that claim 195 relates to the sales tax liability, interest and penalties of PT–1 Communications, Inc., for tax years 1996 through 2001. (Obj.¶¶ 27–29.) Thereafter, PT–1 Communications, Inc., moved to expunge claim 195 as having been filed after the Bar Date.

MDOR argues that claim 195 amends the timely filed claim 45, and thus, should not be expunged. MDOR also argues that, in the event claim 195 is not found to amend claim 45, it should be allowed as a late filed claim on the basis of excusable neglect. Both the attorneys for the Debtors and the Official Committee of Unsecured Creditors oppose MDOR's contentions.

## DISCUSSION

I. *Post–Bar Date Amendment to Proof of Claim*

■ In order for a proof of claim filed after the bar date to be deemed an amended claim, it must not assert a new claim. *See In re Macmillan Inc.,* 186 B.R. 35, 49 (Bankr.S.D.N.Y.1995); 9 COLLIER ON BANKRUPTCY ¶ 3001.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2002). In determining whether a purported amendment is really a new claim, the following two-pronged test is applied: (1) "[a] court should look first to whether there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable;" and (2) "[t]he court should also examine all of the facts of the particular case, and determine whether it would be equitable to allow the amendment." *In re Black & Geddes, Inc.,* 58 B.R. 547, 553 (S.D.N.Y.1983). *See In re Macmillan Inc.,* 186 B.R. at 49.

■ First, the similarity of the timely filed claim to the purported amendment is examined. *See id.* In this analysis, several courts have employed the same "conduct, transaction, or occurrence" standard set forth in FED. R. CIV. P. 15(c)(2), made applicable by FED. R. BANKR. P. 7015. *See In re Drexel Burnham Lambert Group, Inc.,* 159 B.R. 420, 425 (S.D.N.Y.1993). In the context of proofs of claim, this standard is satisfied and an amendment may be made after the bar date has passed " 'where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.' " *In re Macmillan Inc.,* 186 B.R. at 49 (quoting *In re W.T. Grant Co.,* 53 B.R. 417, 420 (Bankr. S.D.N.Y.1985)). *See In re G.L. Miller & Co., Inc.,* 45 F.2d 115, 116 (2d Cir.1930).

■ Second, the court examines whether allowing the purported amendment would be equitable. *See In re Macmillan Inc.,* 186 B.R. at 49; *In re Black & Geddes, Inc.,* 58 B.R. at 553. The case *In re Miss Glamour Coat Co., Inc.,* is often cited for the following enumeration of the equitable factors to be considered:

(1) whether the bankrupt and creditors relied upon the [claimant's] earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would follow ... [;] (2) whether the other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing this amendment to the [claimant's] proof of claim [;] (3)whether the [claimant] intentionally or negligently delayed in filing the proof of claim ... [;] (4) the justification, if any, for the failure of the [claimant] to file for a time extension for the submission of further proofs of claim ...; and (5) whether or not there are any other considerations which should be taken into account in assuring a just and equitable result.

*In re Miss Glamour Coat Co., Inc.*, No. 79 Civ. 2605, 1980 WL 1668, at \*5, 1980 U.S. Dist. LEXIS 14545, at \*12–13 (S.D.N.Y. Oct.8, 1980) (footnote omitted) (citations omitted). The court in *In re Macmillan Inc.*, similarly formulated the equitable factors to be weighed as follows:

> (1) undue prejudice to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*In re Macmillan Inc.*, 186 B.R. at 49.

■ It is clear that claim 195 is a new claim and not an amendment of the timely filed claim 45. Claim 45 was filed against PT–1 Long Distance, Inc., under its corresponding docket number. Claim 195 was filed against PT–1 Communications, Inc./ PT–1 Long Distance, Inc., under the docket number for the PT–1 Communications, Inc., case. MDOR states, however, that claim 195 relates only to PT–1 Communications, Inc.. (Obj.¶¶ 26–29.) Thus, claims 45 and 195 pertain to two different debtors, namely PT–1 Long Distance, Inc., and PT–1 Communications, Inc., respectively. Inasmuch as claims 45 and 195 were filed against different debtors, it is abundantly clear that they are entirely different claims. Furthermore, claim 45 relates to the tax years 1999 and 2000 (Obj.¶¶ 19, 24), while claim 195 encompasses the tax years 1996 through 2001 (Obj.¶¶ 27–29) and is for an amount over five times larger than claim 45. Although bankruptcy courts are split on the issue, several courts have ruled that a purported amendment that asserts a debt for a new tax year is a new claim. *See In re Sunwest Hotel Corp.*, No. 96–4187, 1998 WL

982905, at \*8–9, 1998 U.S. Dist. LEXIS 21178, at \*25–26 (D.Kan. Sept. 29, 1998); *In re Baker*, 129 B.R. 607, 608 (E.D.Mo. 1991); *In re Sage–Dey, Inc.*, 170 B.R. 46, 49 (Bankr.N.D.N.Y.1994). In addition, courts have also ruled that a proof of claim which purports to amend a timely filed claim should be reasonably within the amount of the timely filed claim. *See In re AM Int'l, Inc.*, 67 B.R. 79, 82 (N.D.Ill. 1986); *In re Ltd. Gaming of Am., Inc.*, 213 B.R. 369, 375 (Bankr.N.D.Okla.1997); *In re Manville Forest Prods. Corp.*, 89 B.R. 358, 375 (Bankr.S.D.N.Y.1988).

This Court is of the opinion that equity does not transform claim 195 into an amendment of the timely filed claim 45. MDOR's reliance on the statement that appears on claim 45 filed against PT–1 Long Distance, Inc. to the effect that the tax amounts set forth therein were not final because of an ongoing audit, is unavailing as an argument that PT–1 Communications, Inc., was put on notice of a future claim. At the very most, only PT–1 Long Distance, Inc., was put on notice of a future claim amendment by that statement.

## II. Excusable Neglect

■ The court may deem an untimely claim allowable if the claimant establishes excusable neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Although MDOR submitted its excusable neglect argument as part of its objection to the within motion and did not follow the technical requirement of submitting it on motion, *see* FED. R. BANKR. P. 9006(b)(1), efficiency dictates that this Court evaluate it by reason of the provisions of 11 U.S.C. § 105(a).

■ Whether a claimant's neglect is excusable is an equitable determination, which takes into account all of the relevant

circumstances. *See Pioneer Inv. Servs. Co.*, 507 U.S. at 395, 113 S.Ct. 1489. "These include, ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id. See Milligan v. Tupperware Worldwide, Inc.*, Nos. 97–7445, 97–7773, 1998 WL 538116, at *1–2, 1998 U.S.App. LEXIS 20642, at *4 (2d Cir. Mar.13, 1998). Excusable neglect encompasses situations "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co.*, 507 U.S. at 388, 113 S.Ct. 1489. This Court also notes that "[equitable powers] have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

 Prior to weighing the equitable factors involved in determining excusable neglect, a brief exposition of Massachusetts law is necessary. All persons doing business in Massachusetts as a vendor are required to register as such with MDOR. *See* MASS. GEN. LAWS ch. 64H, § 7(a) (West, WESTLAW through ch. 10 of the 2003 1st Annual Sess.). A vendor is defined as a "person selling tangible personal property or services of a kind the gross receipts from the retail sale of which are required to be included in the measure of the tax imposed by this chapter." MASS. GEN. LAWS ch. 64H, § 1 (West, WESTLAW through ch. 10 of the 2003 1st Annual Sess.). It is "presumed that all gross receipts of a vendor ... from sales [are] subject to tax until the contrary is established." MASS. GEN. LAWS ch. 64H, § 8(a) (West, WESTLAW through ch. 10 of the 2003 1st Annual Sess.). Every vendor must collect and pay to MDOR sales and use taxes. *See* MASS. GEN. LAWS ch. 64H, §§ 2, 3 (West, WESTLAW through ch. 10 of the 2003 1st Annual Sess.); MASS. GEN. LAWS ch. 64I, §§ 2, 4 (West, WESTLAW through ch. 10 of the 2003 1st Annual Sess.). In addition, every vendor subject to sales or use taxes pursuant to MASS. GEN. LAWS ch. 64H or 64I must file a tax return with MDOR. *See* MASS. GEN. LAWS ch. 62C, § 16(h), (i) (West, WESTLAW through ch. 10 of the 2003 1st Annual Sess.). Inasmuch as PT–1 Communications, Inc., never registered as a vendor or filed tax returns with MDOR, MDOR concluded that PT–1 Communications, Inc., owed no taxes to it. (Miller Aff. ¶ 3.) Debtors' attorneys dispute MDOR's contention that PT–1 Communications, Inc., was required to register as a vendor or to file tax returns with MDOR.

Assuming *arguendo* that Massachusetts law dictates that PT–1 Communications, Inc., has tax liability, Debtors' attorneys argue that MDOR should have filed a protective claim prior to the Bar Date. In furtherance of this argument, Debtors' attorneys point out that PT–1 Communications, Inc., was registered with the Commonwealth of Massachusetts as a foreign telecommunications corporation doing business in Massachusetts and filed annual reports with the Department of Telecommunications & Energy of Massachusetts. It would be unreasonable, however, to expect MDOR to divine from those annual reports that taxes were due to it from PT–1 Communications, Inc.. [2] In addition, it

**2.** Furthermore, the tax manager for PT–1 Communications, Inc., sent a letter dated March 30, 1998, to the Department of Public Utilities of Massachusetts (the former name of the Department of Telecommunications & Energy) regarding its 1997 annual report, stating

would be unduly burdensome and impractical to require taxing authorities to file protective claims in pursuit of such potential phantasms of liability. *See In re Sitzberger,* 65 B.R. 256, 260 (Bankr.S.D.Cal. 1986) (agreeing with IRS, which was listed in the debtor's schedules in an unknown amount for the tax year in dispute, that filing a protective claim should not be required where the IRS was given no reason to believe that there was any tax liability until the debtor's tax return for that year was filed, which was after the bar date).

In this case, the equities tip in favor of allowing MDOR's claim 195, subject and without prejudice to PT–1 Communications, Inc.'s right to move to reduce or to expunge it as the facts may warrant. Although conscious disregard of the bar date is not excusable neglect, *see In re Mahoney Hawkes, LLP,* 272 B.R. 19, 20 (1st Cir. BAP 2002); *In re SC Corp.,* 265 B.R. 660, 662 (Bankr.D.Conn.2001); *In re D.A. Elia Constr. Corp.,* 246 B.R. 164, 170 (Bankr. W.D.N.Y.2000) [3], MDOR had no reason on the basis of the facts known to it prior to the Bar Date to conclude that it had a claim against PT–1 Communications, Inc.. MDOR first became aware of its claim after the Bar Date and within about three and a half months of discovering the alleged tax liability of PT–1 Communications, Inc., MDOR filed claim 195.[4] *See In re Sitzberger,* 65 B.R. at 260 (noting IRS's expediency in filing its late claim within about two months of becoming aware of debtor's tax liability). Although MDOR, upon discovering the tax liability, should have made a motion, pursuant to FED. R. BANKR. P. 9006(b)(1), for allowance to file a late claim instead of attempting to amend its claim against another debtor, this alone does not demonstrate bad faith on MDOR's part. Debtors' attorneys are still in the process of objecting to claims, and "[a]n amended plan and disclosure statement may be [sic] need to be filed to deal with a potentially changed playing field." (Notice of Hr'g at 5.) Thus, the danger of prejudice to PT–1 Communications, Inc., and the potential impact on these judicial

---

that "[PT–1 Communications, Inc.] is not directly conducting business in [Massachusetts]." (PT–1 Communications, Inc.'s Resp. to Obj. Ex. G.)

**3.** These cases are distinguishable from the one at bar. In *In re Mahoney Hawkes, LLP,* the claimant, which was listed as a creditor, did not want to file a claim for malpractice and conflict of interest against the debtor, with whom the creditor had a long-standing relationship, until it became clear that the creditor would be unable to collect from other sources. *See In re Mahoney Hawkes, LLP,* 272 B.R. at 20. In *In re SC Corp.,* MDOR, which was also involved in that case, risked not filing a claim based on the debtor's prior history of seeking extensions to file tax returns and paying the amounts owed in full. *See In re SC Corp.,* 265 B.R. at 662. In *In re D.A. Elia Constr. Corp.,* the court found that the claimants, which were listed as creditors on the debtor's schedules, were using the fact that the bar date was "buried" in a notice as a pretext because a prior notice made clear

that claims needed to be filed, and the claimants did not avail themselves of court hearings, one of which confirmed the plan. *See In re D.A. Elia Constr. Corp.,* 246 B.R. at 166, 171.

**4.** Debtors' attorneys cite *In re New York Trap Rock Corp.,* 153 B.R. 648 (Bankr.S.D.N.Y. 1993), as "theoretically" imposing a stricter standard when a creditor files a late claim because of no actual knowledge of the claim until after the bar date. (PT–1 Communications, Inc.'s Resp. to Obj. at 17.) The court in *In re New York Trap Rock Corp.,* however, applied the excusable neglect standard laid out in *Pioneer Investment Services Co.* and concluded that there was no excusable neglect where the creditor delayed filing its claim for about nine months after receiving actual knowledge of it; a disruptive effect would be caused by the delay in liquidating the claim, which was dependent on another lawsuit; and the creditor exhibited questionable good faith. *See In re New York Trap Rock Corp.,* 153 B.R. at 652–653.

**490**

proceedings of allowing MDOR to file claim 195 late are outweighed by the reason for MDOR's delay, the length of the delay and MDOR's good faith.

As already noted above, the Debtors' attorneys may still file objections to claim 195 based on the merits. In that regard, this Court's attention has been called to MDOR's Directive 96–1, which specifically addresses the tax liability of a telecommunications provider selling prepaid calling cards. Mass. Dep't of Revenue Directive 96–1 (May 6, 1996), *available at* http://www.dor.state.ma. us/rul_reg/dir/dir_96_1.html. Directive 96–1 belies the argument of Debtors' attorneys that PT–1 Communications, Inc., is not liable for any taxes to MDOR because it sold its prepaid calling cards in Massachusetts through distributors. As stated in Directive 96–1, "the telecommunications provider [not the retail vendor who sells the calling cards to retail customers and through whom the calling cards may be marketed] must pay sales tax on cards purchased in Massachusetts and use tax on cards which are for use, storage or consumption in Massachusetts." *Id.* In addition, the argument by Debtors' attorneys that PT–1 Communications, Inc., is not a vendor because it has no place of business in Massachusetts is undercut by the Regulations for the Massachusetts Code, which detail how the a vendor's registration should be displayed by "an *out-of-state vendor who is without a place of business in Massachusetts.*" 830 C.M.R. § 62C.67.1(3)(g) (West, WESTLAW through Jan. 17, 2003, Register # 965). The Regulations for the Massachusetts Code also provide the circumstances under which a sale of telecommunications services is deemed to take place in Massachusetts. 830 C.M.R. 64H.1.6(4)(a) (West, WESTLAW through Jan. 17, 2003, Register # 965).

CONCLUSION

1. This Court has jurisdiction over the instant matter pursuant to 11 U.S.C. § 105(a), 501, 502 & 503 and 28 U.S.C. §§ 157(a), (b)(2)(B) & 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York, dated August 28, 1986.

2. The motion of PT–1 Communications, Inc., to expunge MDOR's claim 195 is denied.

3. MDOR is directed to settle an Order in conformity with this decision.