**In re SAGE–DEY, INC., et al., Debtors.**

**Bankruptcy Nos. 92–63598 to 92–63600.**

United States Bankruptcy Court,
N.D. New York.

July 8, 1994.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey A. Dove, of counsel), Syracuse, NY, for debtors.

William F. Larkin, Asst. U.S. Atty., Syracuse, NY, for I.R.S.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion by Sage–Dey, Inc. ("SDI"), Sage–Allen Co., Inc. ("SA") and Addis & Dey's, Inc. ("AD") (collectively referred to herein as the "Debtors") filed January 18, 1994, for an order pursuant to § 502(a) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") expunging Claims 649 and 650 of the Internal Revenue Service ("IRS"). The motion was heard at a regular motion term of the Court on February 15, 1994, in Syracuse, New York. The parties were provided with an opportunity to file memoranda of law, and the matter was submitted for decision on March 3, 1994.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1) and (b)(2)(A), (B) and (O).

### FACTS

The Debtors filed voluntary petitions for relief under Chapter 11 of the Code on November 20, 1992. The Debtors' Amended Joint Chapter 11 Plan ("Plan") was confirmed on December 22, 1993. The original bar date for filing proofs of claim in the Debtors' case was June 28, 1993, which was thereafter shortened to May 1, 1993, by Order of this Court dated March 22, 1993.

The IRS filed proofs of claim in the amounts of $22,026.72 (Claim No. 352) and $212,326.51 (Claim No. 353) on March 4, 1993, and March 5, 1993, respectively. Claim No. 352 consists of Federal Insurance Contribution Act ("FICA") withholding tax liabil-

ities of AD for the fourth quarter of 1991. Claim No. 353 represents estimated FICA withholding tax liabilities of SA for 1992 and Federal Unemployment Tax Act ("FUTA") tax liabilities for 1992. On October 12, 1993, the Debtors filed a motion seeking to reduce Claim No. 352 from $22,026.72 to $5,532.74 and to expunge Claim No. 353 in its entirety. The Debtors later withdrew their objection to Claim No. 352. The IRS also withdrew Claim No. 353 per a letter of October 20, 1993, in which the IRS indicated that its claim had been satisfied.[1]

Shortly after filing its proofs of claim for the 1991 and 1992 tax liabilities, a discrepancy regarding the amount of FICA taxes withheld by AD and SA for the fourth quarter of 1990 was discovered by the IRS upon comparing the information provided to the IRS on Forms 941 with that reported to the Social Security Administration on W–2 and W–3 Forms. The IRS Processing Center in Andover, Massachusetts, notified SA of the discrepancy in a letter dated March 30, 1993. As set out in the letter, SA under-reported wages for the fourth quarter of 1990 by $56,568.00, resulting in an increased tax liability to SA of $8,654.90. A similar letter was sent to AD on or about April 13, 1993, indicating an increased tax liability of $28,-234.02 based on AD's alleged failure to report wages of $184,536.06 for the fourth quarter of 1990. After receiving no response from either debtor, the IRS alleges that the information concerning SA's potential tax liability was inputted into its computers and made available to the Special Procedures Division in Buffalo, New York, during the week of May 16, 1993. Similar information concerning AD's potential tax liability was inputted into the IRS computers on July 11, 1993.

Based on this information, on November 4, 1993, an "amended" Claim No. 352 in the amount of $56,745.16, and labeled by the Debtors as Claim No. 649, was filed by the IRS. Claim No. 649 consists of $22,026.72 listed originally in Claim No. 352 and an additional amount of $34,718.44, representing FICA liabilities of AD for the fourth quarter of 1990. Claim No. 650, as labeled by the Debtors, was also filed on November 4, 1993, in the amount of $10,642.65. Claim No. 650 represents a new claim for FICA tax liabilities of SA for the fourth quarter of 1990.

### ARGUMENTS

With respect to Claim No. 649, the Debtors acknowledge that the FICA tax liability of AD for 1991, as originally set forth in Claim No. 352, should be allowed and will be paid through the Debtors' Plan. However, insofar as Claim No. 649 asserts liability for the fourth quarter of 1990, the Debtors make the argument that the claim should be disallowed as representing a new claim for a separate and distinct tax period and not an amendment to Claim No. 352. The IRS takes the position that since Claim No. 649 simply adds an additional quarter of FICA tax liability to that previously listed in Claim No. 352, it should be allowed as an amendment.

As to Claim No. 650, the Debtors assert that since there is no proof of claim to which Claim No. 650 can relate back, it is clearly a new claim. According to the memorandum of law filed by the IRS, the IRS does not dispute the fact that Claim No. 650 is a "new" claim.

With respect to both claims, the IRS contends that the Court should balance the equities and consider the fact that the IRS had no reason to request an extension of the bar date since the Forms 941 submitted by the Debtors under penalty of perjury for the fourth quarter of 1990 showed no additional tax obligation being due. The IRS makes the argument that the Debtors should not be permitted to benefit from having filed false Forms 941. In response to this argument, the Debtors assert that the IRS was aware of the potential claims against the Debtors prior to the bar date as evidenced by the letters sent to the Debtors on March 30, 1993, and April 13, 1993, alerting them to the possible discrepancy in FICA tax liability. The Debtors assert that the IRS had ample opportunity to file timely proofs of claim for

---

1. Letter was attached to the Order Expunging Claim No. 353 dated December 22, 1993, of which the Court takes judicial notice.

the FICA tax liabilities for the fourth quarter of 1990.

In the alternative, the IRS argues that both claims should be allowed under the standards set forth in *Pioneer Investment Serv. v. Brunswick Assoc. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

## DISCUSSION

Whether to permit an amendment of a timely filed proof of claim is governed by the standards set forth in Fed.R.Bankr.P. 7015, which incorporates Rule 15 of the Federal Rules of Civil Procedure ("Fed.R.Civ. P."). *See In re Stavriotis,* 977 F.2d 1202, 1204 (7th Cir.1992); *In re Integrated Resources, Inc.,* 157 B.R. 66, 70 (S.D.N.Y.1993). The critical concern is whether the debtor will be unduly prejudiced by the amendment. *Id.* "[A]mendment to a claim is to be freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re Intern. Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir. 1985) (citations omitted). The decision to allow an amendment is a matter of the court's discretion. *In re Mercer's Kwik Stop Food Stores, Inc.,* Ch. 11 Case No. 90–02046, slip op. at 3 (Bankr.N.D.N.Y. July 2, 1993), citing *In re McLean Indust. Inc.,* 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990). The analysis requires that a two-pronged test be applied. *Mercer, supra,* slip op. at 3–4; *In re Osborne,* 159 B.R. 570, 575 (Bankr.C.D.Cal. 1993), *aff'd* 167 B.R. 698 (9th Cir. BAP 1994) (Table, No. CC–93–2191–JOME). Initially, the court must determine whether the new claim bears a reasonable relationship to the original claim. *Id.,* citing *inter alia In re Robert Stone Cut Off Equipment and Bentley Welding & Machinery Co.,* 98 B.R. 158, 160 (Bankr.N.D.N.Y.1989); *see also Mercer, supra,* slip op. at 4 (Amendment must not be a disguised attempt to file a new claim.).

The second prong of the test is to be applied only if the first prong is satisfied and the claim qualifies as an amendment and not simply a new claim. *Id.; Integrated Resources, supra,* 157 B.R. at 70. It requires that the court determine whether a balancing of the equities supports the allowance of the amendment. *Id.; see also In re Barton,* 151 B.R. 110, 115 (Bankr.W.D.Mich.1993) (citations omitted).

In considering amendments to claims of the IRS, the courts have often been confronted with the situation where the IRS is not simply seeking to increase the amount of its prior claim but is also seeking to add a different type of tax or different tax years in its subsequent proof of claim. It is this latter situation involving the addition of a claim for taxes arising out of different tax years which is presently before this Court. Claim No. 352, which was filed by the IRS on March 4, 1992, included a claim for FICA withholding taxes of AD for the fourth quarter of 1991. Claim No. 649, which was filed on November 4, 1993, some six months after the bar date, includes $22,026.72 listed originally in Claim No. 352 and an additional sum of $34,718.44, representing FICA liabilities of AD for the fourth quarter of 1990, for a total claim of $56,745.16.

There appears to be a split of authority regarding whether a proof of claim that asserts tax liability for additional quarters or additional years qualifies as an amendment of a prior timely filed claim. Several courts have indicated that proofs of claim which attempt to add tax liability for additional time periods constitute new claims, rather than amendments. *See e.g. In re Unroe,* 937 F.2d 346, 349 (7th Cir.1991) ("Separate years imply separate tax claims under Bankr.R. 7015."); *Stavriotis, supra,* 977 F.2d at 1206 n. 4 (Claim for 1982 taxes does not relate back to an original claim for 1981 and 1984 taxes.); *In re Johnson,* 84 B.R. 492, 494 (Bankr.N.D.Ohio 1988) (Court declined to permit an amendment which would have added third quarter 1986 FICA tax liabilities to the original proof of claim which included FICA tax liabilities for *inter alia* the first and second quarters of 1986).

The Debtors refer the Court to a case recently decided by the bankruptcy court for the Middle District of Georgia. *See In re Appling,* 162 B.R. 43 (Bankr.M.D.Ga.1993). In *Appling* the IRS had timely filed a proof of claim for income tax liabilities for 1986

1987 and 1990. The IRS later determined that additional taxes were owed for 1989 as Mrs. Appling had failed to include income from a retirement plan distribution. Approximately two years after the bar date and confirmation of the debtors' Chapter 13 plan, the IRS filed its amended proof of claim. The IRS had not alleged that Mrs. Appling had committed any fraud in the preparation of her returns, and the court, relying on *Unroe*, disallowed the claim of the IRS.

In *Unroe* the IRS had filed a timely proof of claim for income tax liabilities for 1982. It later sought to amend its proof of claim to include tax liabilities for 1983. The court indicated that "[e]xamples of amendments permitted under Fed.R.Bankr.P. 7015 include correcting the amount of tax, penalties or interest claimed in a timely filed claim." *Unroe, supra*, 937 F.2d at 349. While the court concluded that the untimely proof of claim was not an amendment permitted under Fed.R.Bankr.P. 7015, it continued its analysis to determine whether an equitable amendment should be allowed on the theory that the 1982 claim provided notice of the IRS' intent to collect for 1983 taxes as well. *Id.* at 350. The court found that the bankruptcy court had not abused its discretion in permitting the IRS to amend its claim to include 1983 tax liabilities. *Id.* at 351.

This Court previously addressed a similar issue with respect to the State of New York. *See In re Fugo*, Ch. 7 Case No. 82–00511 (Bankr.N.D.N.Y. May 23, 1983). In *Fugo* the New York State Department of Labor ("State") timely filed its proof of claim for delinquent unemployment insurance taxes for the period of July 1, 1976 to March 3, 1978. Approximately three months after the bar date, the State filed an additional priority claim for unpaid unemployment insurance taxes for the second and third quarters of 1981. The Court concluded that the second claim was not a continuing claim and, therefore, it did not amend the claim originally filed. *Id.* at 3.

Several other courts have taken the opposite approach and have indicated a willing-

ness to amend a prior proof of claim timely filed to include tax liability for different tax quarters and/or years. *See e.g. In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 36 (Bankr.E.D.Pa.1988) ("[A]n attempt by IRS to add additional quarters (such as here) or even additional years is usually not considered a new claim." (citations omitted)); *In re Simms*, 40 B.R. 186 (Bankr.N.D.Ga.1984) (court permitted IRS to amend its prior proof of claim for tax liability for the years 1973, 1974 and 1976 to add liability for 1977, 1978, 1979 and 1980); *Osborne, supra*, 159 B.R. at 577 (court in *dicta* indicated that the IRS should be permitted to amend a timely filed proof of claim to add subsequent years.); *Barton, supra*, 151 B.R. at 115 ("[I]f the additional claim adds additional quarters of tax or similar types of taxes, it should be allowed as an amendment.").

■ The Court of Appeals for the Second Circuit, in a case heard pursuant to § 57(n) of the Bankruptcy Act,[2] also permitted an amendment to a prior proof of claim filed pursuant to the New York State Unemployment Insurance Law for tax liability for the period of April 1, 1944 to September 30, 1944. *See Indus. Comm'r v. Schneider*, 162 F.2d 847 (2d Cir.1947). The amendment included taxes and interest for the periods from July 1, 1943 to March 31, 1944, and October 1, 1944 to November 30, 1944. The court determined that the amendment simply corrected errors in the original proof of claim following the audit of the debtor's books, which were shown to be inaccurate. *Id.* The court based its decision on the "continuous nature of the taxpayer's (contributor's) statutory liability for taxes that accumulate as they accrue …" *Id.* at 849.

At first glance it may appear that the conclusion in *Fugo* stands in direct contradiction to that reached in *Schneider*. However, this Court finds that the two decisions are easily reconciled with one another since both courts focus on the *continuous* nature of the tax liability in reaching their conclusions. In *Fugo* not only were the taxes for a subsequent period from that originally filed,

---

**2.** Decisions interpreting § 57(n) of the Bankruptcy Act are relevant to an analysis concerning bar dates and amendments even though the specific time periods for filing proofs of claim may have changed. *Hanscom, supra*, 96 B.R. at 36, n. 4.

but there was also a hiatus of three years between the tax liability set forth in the original proof of claim and that listed in the proposed amendment. In *Schneider*, however, the proposed amendment included taxes for periods immediately before and after those listed in the original proof of claim which overlapped between two consecutive years.

■ Given the continuous, albeit retrospective, nature of AD's statutory liability for FICA taxes that "accumulate as they accrue," the Court concludes that Claim No. 649 *amends* Claim No. 352. Claim No. 649 corrects an error in the amount of FICA tax liability listed in Claim No. 352 to include a prior quarter. As was the case in *Schneider*, the fact that the prior quarter falls in a different year than listed in the original proof of claim does not alter this conclusion. The Court's finding today is limited in its application, however, to amendments for FICA and FUTA tax liabilities accrued prior to the time period listed in the original proof of claim.

The Court shares the concerns expressed by other courts in allowing the IRS to file a claim for one tax year and later permitting it to amend the claim after the bar date to include additional tax years. *See e.g. Unroe, supra*, 937 F.2d at 349. The concern raised is generally with respect to finality of the claim process and possible prejudice to the debtor. These are the very issues, however, that the second prong of the Court's analysis is intended to address in deciding whether to allow the particular amendment.

■ Under the second prong of the analysis, the Court must balance the equities and determine whether allowance of the amendment would be fair to all parties. *Mercer, supra*, slip op. at 4 (citations omitted). Any

determination is to be made in the context of the policy favoring liberal amendment. *See McLean, supra*, 121 B.R. at 710. Furthermore, in applying the principles of equity, it is important that the Court ensure that " 'fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.' " *Internat. Horizons, supra*, 751 F.2d at 1216, quoting *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

■ With this in mind, the Court considers the following factors:

1. Whether the debtors and creditors relied upon the Government's earlier proofs of claim or whether they instead had reason to know that subsequent proofs of claim would follow upon completion of audit;

2. Whether the other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing this amendment to the IRS' proof of claim;

3. Whether the IRS intentionally or negligently delayed in filing the proof of claim stating the amount of taxes due;

4. The justification, if any, for the failure of the IRS to file for a time extension for the submission of further proofs of claim pending an audit; and

5. Whether there are any other considerations that should be taken into account in assuring a just and equitable result.

*In re Miss Glamour Coat Co., Inc.*, 1980 WL 1668 (S.D.N.Y.).[3]

■ As to the first factor, the Debtors certainly had reason to know that the IRS might seek to amend Claim No. 352. The IRS Service Center in Massachusetts notified AD on or about April 13, 1993, that it

---

**3.** As the case *sub judice* involves the allowance of an amendment asserting tax liability, the Court elects to apply these factors rather than those previously cited in *Mercer, supra*, slip op. at 4–5, namely, (1) whether there is undue prejudice to an opposing party; (2) whether there has been bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) whether there is

justification for the inability to file the amended claim at the time the original claim was filed. *Mercer* did not involve the amendment of a claim of a tax entity, and the factors set forth in *Glamour Coat* are more often cited as those to be applied to issues of tax liability. *See e.g. Unroe, supra*, 937 F.2d at 350; *Internat'l Horizons, supra*, 751 F.2d at 1218; *In re Miller*, 118 B.R. 76, 80 (E.D.Tenn.1989); *Barton, supra*, 151 B.R. at 115–116; *In re Midwest Teleproductions Co., Inc.*, 69 B.R. 675, 677 (Bankr.N.D.Ohio 1987).

had found a discrepancy in AD's Form 941 for the fourth quarter of 1990. This letter was sent out prior to the bar date of May 1, 1993. Furthermore, Claim No. 649 was filed by the IRS prior to the Plan's confirmation.

With respect to whether there would be a windfall to other creditors if the amendment was not allowed, it appears that approximately $34,718.44 would still be available for distribution to other creditors if Claim No. 649 was not allowed.

In addressing the third and fourth factors, it is the view of this Court that the IRS neither intentionally nor negligently delayed filing its amendment. After allowing AD the opportunity to respond to the IRS' letter of April 13, 1993, the information was inputted into the IRS' computers on or about July 11, 1993, and made available to the Special Procedures Division of the IRS. Courts generally have been reluctant to entertain arguments which assert that the creditor's own internal procedures were the cause for its failure to timely file a proof of claim. *Miller, supra,* 118 B.R. at 80; *see also In re Norris Grain Co.,* 81 B.R. 103, 108 (Bankr.M.D.Fla. 1987). However, in this instance, any delay on the part of the IRS is directly attributable to AD's own failure to file an accurate Form 941 for the year 1990. It is not a situation where there was an ongoing audit and the IRS had any awareness of a possible discrepancy. The IRS timely filed its proof of claim for 1991 FICA and FUTA taxes only to later learn of the discrepancy in the Form 941 submitted by AD for the fourth quarter of 1990. Claim No. 649 was filed by the IRS approximately six months after the bar date but approximately two months prior to confirmation of the Debtors' Plan. That almost four months elapsed between the time the information was inputted to the IRS' computer in July, 1993, and the filing of Claim No. 649 appears reasonable to the Court under the circumstances. It also appears that the IRS may not have had a reasonable opportunity to seek an extension given that the letter was written just two weeks prior to the bar date.

Finally, with respect to whether there are any other considerations that should be taken into account in assuring a just and equitable result, the Court is guided by principles of clean hands. *See generally Midwest Teleproductions, supra,* 69 B.R. at 677. To a significant extent the lateness of the IRS' filing of Claim No. 649 was attributable to AD's failure to provide the IRS with an accurate Form 941 for the fourth quarter of 1990. It would be inequitable to permit the Debtors to benefit from their own error, whether intentional or unintentional.

■ The Debtors assert that inasmuch as the IRS was aware of the discrepancy in AD's Form 941 prior to the bar date as evidenced by its letter of April 13, 1993, it was incumbent upon the IRS to timely file a proof of claim. It is evident to the Court that while the IRS Processing Center knew of the discrepancy, that information had not been conveyed to its Special Procedures Division. As previously indicated, this Court is normally reluctant to excuse a creditor whose tardiness in filing its proof of claim is the result of its own internal procedures. However, the Court also understands the IRS' reluctance to make adjustments to a taxpayer's accounts until the taxpayer has had an opportunity to respond to inquiry by the IRS. In this instance, the letter from the IRS went out to AD approximately two weeks prior to the bar date. It does not appear unreasonable that the Special Procedures Division was not notified of the discrepancy in that time period so as to allow it to timely file a proof of claim or to request an extension of the bar date. In balancing the equities, the IRS' delay in filing its proof of claim, while a factor to be considered, does not offset the weight given by the Court to the fact that AD failed to provide accurate information to the IRS.

In applying the five factors enumerated in *Glamour Coat,* the Court concludes that the equities weigh in favor of allowing Claim No. 649. The Court is aware that due to the priority nature of the claim, its decision may have an impact on the distribution to creditors under the Debtors' Plan, which was previously confirmed in December, 1993. However, both the letter from the IRS informing AD of the discrepancy and the amendment filed in November, 1993, provided the Debtors' with notice of the potential additional tax liability well prior to confirmation.

The second issue before the Court is whether to allow Claim No. 650, which includes FICA liabilities of SA for the fourth quarter of 1990. There is technically no prior claim which Claim No. 650 purports to amend. Previously, the IRS filed its proof of claim, labelled by the Debtors as Claim No. 353, asserting both FICA and FUTA tax liabilities of SA for 1992. Claim No. 353 was withdrawn approximately two weeks before Claim No. 650 was filed. Therefore, it would appear that the Court must determine whether Claim No. 650 should be allowed as an entirely new claim. There is no question that it was untimely filed on November 4, 1993, some six months after the bar date. SA received letter notification by the IRS of the discrepancy in its FICA tax liabilities for the fourth quarter of 1990 on or about March 30, 1993. The information was subsequently inputted to the IRS' computers on or about May 16, 1993, approximately two weeks after the bar date. The IRS argues that under the standards set forth in *Pioneer Investment, supra,* —— U.S. ——, 113 S.Ct. 1489, the bar date should be extended pursuant to Fed.R.Bankr.P. 9006(b)(1) [4] based on excusable neglect. The Supreme Court in *Pioneer Investment* concluded that any determination of excusable neglect is an equitable one, taking into account all relevant circumstances surrounding the party's omission. *Id.* at ——, 113 S.Ct. at 1498. Equitable factors to be considered include (1) the danger of prejudice to the Debtors; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the IRS; and (4) whether the IRS acted in good faith. *See id.* at ——, 113 S.Ct. at 1498.

These are similar factors to those considered by this Court in determining whether to allow Claim No. 649. As noted above, it would appear that there is no danger of prejudice to the Debtors in that they were notified of the discrepancy prior to the bar date and failed to respond to the inquiry by the IRS. In addition, Claim No. 650 was filed within six months of the bar date and prior to confirmation. Admittedly, the delay

may have a negative impact on the distribution to creditors in this case in that the Debtors' Plan has been confirmed, but that is only one of several factors that the Court must weigh. The Court must also consider the fact that the IRS appears to have acted in good faith. When the IRS Processing Center became aware of a possible discrepancy, it provided SA with ample opportunity to respond to its inquiry before making adjustments to the Debtors' accounts. SA apparently failed to reply to the IRS' letter of March 30, 1993, and did not inform the IRS Processing Center of its pending Chapter 11 case. The Special Procedure Division, in failing to timely file a claim for the FICA taxes for the fourth quarter of 1990, reasonably relied upon the Form 941 submitted by SA which indicated that no additional taxes were due.

The lack of prejudice to the Debtors, combined with the good faith demonstrated by the IRS, weigh strongly in favor of allowing Claim No. 650. The Court makes no finding with respect to the IRS' allegations that the Debtors fraudulently filed Form 941. However, the fact that an error was made in SA's Form 941 does persuade the Court that in light of all the factors, it would be inequitable to permit the Debtors to benefit from the apparent inaccuracy, regardless of Debtors' motive. The IRS relied on SA's Form 941, which indicated no tax would be due for the fourth quarter of 1990. Accordingly, the Court finds, based on the standards set forth in *Pioneer Investment,* that the underlying facts warrant an extension of the bar date based on the conclusion that the IRS' failure to file a timely claim for 1990 fourth quarter taxes was the result of excusable neglect. *See generally Norris Grain, supra,* 81 B.R. at 109.

For the foregoing reasons, it is

ORDERED that the motion of the Debtors seeking to expunge Claims No. 649 and 650 of the IRS be denied.

---

**4.** Fed.R.Bankr.P. 9006(b)(1) governs the permissibility of late filings in Chapter 11 bankruptcies.

*Id.* at ——, 113 S.Ct. at 1495, n. 4.