In re **LIMITED GAMING OF AMERICA, INC.**, a corporation, Debtor.

**Bankruptcy No. 96–00395–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

Oct. 1, 1997.

Patrick O'Connor, Tulsa, OK, for debtor–in–possession.

Dennis Duffy, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Motion for Leave to Reinstate and Amend the IRS's Erroneously Withdrawn Proof of Claim or Alternatively, For Permission to File Late Claims (the "Motion") filed by the United States of America, acting through the Internal Revenue Service ("IRS"). Limited Gaming of America, debtor herein ("LGA"), filed an Objection to the Motion. An evidentiary hearing on the Motion was held on August 13, 1997. The IRS appeared through its attorney, Dennis Duffy. LGA appeared through its attorney, Patrick D. O'Connor. Following the conclusion of the evidentiary hearing, post-trial briefs were submitted to the Court by the IRS and LGA, and the Motion was taken under advisement. The following findings of facts and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

### Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C.

§ 1334(b).[1] Reference to the Court of this contested matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (B).

### Statement of Facts

On February 7, 1996, LGA filed its petition for relief in this Court under chapter 11 of the United States Bankruptcy Code. Thereafter, an order was entered setting May 31, 1996, as the deadline for filing proofs of claim. The Order contained the following provision:

> Any person or entity asserting or holding any claims against Limited Gaming of America, Inc., other than those described in paragraph 2 above, who does not timely file a Proof of Claim shall be barred and deemed waived.

*Docket No.* 26. The IRS does not dispute receipt of proper notice of the deadline to file its proof of claim.

On March 27, 1996, the IRS filed its proof of claim for unpaid taxes (hereafter referred to as the "Withdrawn Claim") in the amount of $73,500. The Withdrawn Claim may be broken down as to type of tax and taxable year, as follows:

| Taxable Year | Type of Tax | Amount of Tax |
| --- | --- | --- |
| 1994 | Corporate Income Tax | $ 5,000.00 |
| 1995 | Corporate Income Tax | $ 5,000.00 |
| 1995 | 3rd quarter FICA taxes | $25,000.00 |
| 1995 | 4th quarter FICA taxes | $25,000.00 |
| 1995 | 4th quarter FUTA taxes | $ 1,000.00 |
| 1996 | 1st quarter FICA taxes | $12,500.00 |
| Total: | | $73,500.00 |

With respect to the 1994 and 1995 corporate income tax assessments, the Withdrawn Claim contains the following footnote:

> UNASSESSED TAX CLAIMS HAVE BEEN FILED BECAUSE OF A PROPOSED ADDITIONAL ASSESSMENT TO THE TAX MADE BY AN EXAMINATION OF THE DEBTORS [SIC] TAX RETURN FOR THE PERIOD STATED.

*Government Exhibit 1.* With respect to the unemployment tax claims, a different footnote stated that

> UNASSESSED TAX CLAIMS HAVE BEEN FILED BECAUSE THE DEBTOR HAS FAILED TO FILE RETURN(S) FOR THE LISTED PERIOD. AS SOON AS THE DEBTOR FILES THE RETURN(S) WITH THE I.R.S. AS REQUIRED BY LAW, THIS CLAIM WILL BE ADJUSTED AS NECESSARY.

*Id.* On April 14, 1997, after review of LGA's tax returns, the IRS determined that LGA owed neither the FICA nor the FUTA taxes included in the Withdrawn Claim, and filed a pleading entitled "Notice of Withdrawal" (the "Notice"). The Notice withdrew the Withdrawn Claim in its entirety, and advised LGA and all others to " . . . disregard any further consideration of that claim."

*Government Exhibit 2.*

In June of 1996, the IRS commenced an audit of the debtor's 1993–1995 corporate income tax returns. The IRS completed its income tax audit on May 6, 1997, and determined that LGA owed additional income tax to the IRS for tax years 1993 and 1994, and owed no income tax for tax year 1995. The additional liabilities may be broken down as follows:

| Tax Year | Type of Liability | Amount of Tax |
| --- | --- | --- |
| 1993 | corporate income tax | $ 1,023.00 |
| 1993 | interest on unpaid income tax | $ 253.65 |
| 1994 | corporate income tax | $301,660.00 |
| 1994 | interest on unpaid income tax | $ 49,530,28 |
| Total: | | $352,466.93 |

Based upon the audit, LGA's 1994 income tax liability increased by $346,190.28, from the original claim of $5,000 to $351,190.28. On May 21, 1997, the audit findings were received by the Special Procedures Section of the IRS, which then realized its error in filing the Notice, instead of merely withdrawing the claims for employment tax liability.[2]

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1997).

2. There does not appear to have been any connection between the audit of LGA's income taxes and the determination by the IRS that its claim for FICA and FUTA taxes was incorrect and needed to be withdrawn. In fact, it appears from the testimony that there was no internal communication in the IRS regarding these matters.

At the evidentiary hearing, Jane Fryback ("Ms. Fryback"), a long-time IRS employee and bankruptcy specialist, testified regarding the procedures employed by the IRS in filing claims in bankruptcy cases. Ms. Fryback testified that when the exact amount of tax owing has not been finally determined by the IRS, it is IRS policy to estimate the tax liability of a particular debtor instead of filing for an extension of the claims bar date. She noted that the IRS has the ability to denote its proof of claim as an estimate in obvious ways. Ms. Fryback also testified that it is IRS policy not to seek an extension of the claims bar date while an audit is pending, and that, in her opinion, with respect to the Withdrawn Claim, the designation of the 1994 corporate tax liability as "unassessed" in a footnote was sufficient notice that the amount claimed was merely an estimate, subject to further amendment. The IRS, in this case, did not file for an extension of the claims bar date.

As of the time of this Motion no plan of reorganization had been filed or confirmed.

### Decision

The Motion is granted in part and denied in part. The Withdrawn Claim will be reinstated as to the 1994 corporate income taxes of LGA in its original amount of $5,000.00. The IRS will not be allowed to amend the claim to reflect the increase which it seeks, nor will the IRS be allowed to file a completely new claim out of time for either the 1993 or 1994 income taxes of LGA.

### Analysis

The IRS asks this court to allow it to file a claim for unpaid 1993 income taxes and interest in the amount of $1,276.65, and for unpaid 1994 income taxes and interest in the amount of $351,190.28. The IRS argues that it should be allowed to proceed under either one of two theories: (1) the Withdrawn Claim should be reinstated in the amount of $5,000 and then its amendment allowed in the amount of $352,466.93; or (2) the Court should use its equitable powers to allow the IRS to file the claim as an entirely new claim out of time. LGA objects to either procedure, and asks the Court to prevent the IRS from asserting any further claim against this estate in excess of the original $5,000 claim

for 1994 income taxes. *See Debtor's Objection to Motion of IRS for Leave to Reinstate and Amend or Alternatively for Permission to File Late Claims* (hereafter "*Debtor's Objection*"), p. 3.

### Reinstatement of the $5,000 Claim for 1994 Income Taxes

The first issue to be considered is whether the IRS should be allowed to reinstate the 1994 claim in its original $5,000 amount. The Court notes that the IRS did not ask this Court for such relief. The relief prayed for by the IRS was for reinstatement and amendment. *See Motion* at p. 6. It could be argued that the IRS affirmatively waived its 1994 claim when it filed its Notice advising LGA to "disregard any further consideration of that claim." However, LGA concedes that "[t]o the extent the IRS inadvertently withdrew its entire claim, excusable neglect is probably present, and the IRS should be allowed to refile its $5,000.00 1994 income tax claim out of time." *Debtor's Objection*, p. 3. The Court is not certain that the intentional filing of the Notice by the IRS constitutes "excusable neglect"; however, this Court sees no need to determine a point which LGA does not dispute. Accordingly, the IRS will be allowed to reinstate the Withdrawn Claim to the extent of the $5,000.00 corporate income tax liability for taxable year 1994.

### Standard for Amendment of Claims

■ Having determined that the Withdrawn Claim may be partially reinstated, the next question is whether the amendment requested by the IRS should be allowed. Whether to allow such an amendment is a matter left to the Court's discretion. *See In the Matter of Stavriotis*, 977 F.2d 1202, 1204 (7th Cir.1992) (hereafter "*Stavriotis*"); *In the Matter of Unroe*, 937 F.2d 346, 350 (7th Cir.1991) (hereafter "*Unroe*").

■ The United States Court of Appeals for the Tenth Circuit has provided clear guidance for this Court on the issue of amendment of proofs of claim.

Ordinarily, amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the

estate liable. The court should not allow truly new claims to proceed under the guise of amendment.

*In re Unioil, Inc.,* 962 F.2d 988, 992 (10th Cir.1992) (citations omitted) (hereafter *"Unioil"*); *accord, In re Tanaka Brothers Farms, Inc.,* 36 F.3d 996, 998 (10th Cir.1994) (hereafter *"Tanaka"*). In order to determine whether an amendment to claim should be allowed out of time, the Court must determine whether the original claim gave "adequate notice" of the claim set forth in the amendment, or whether the amendment is in fact a "truly new claim." [3]

**Claim for Additional 1993 Income Taxes**

█ The IRS seeks to amend its proof of claim to include additional 1993 income tax liability. This Court agrees with *Unroe* and holds that each separate taxable year constitutes a separate claim of the IRS. *See Unroe,* 937 F.2d at 349, *accord, Unioil,* 962 F.2d at 992. Since the Withdrawn Claim made no mention of any income tax liability for 1993, it did not provide LGA or the creditors of this estate with notice of the intent of the IRS to hold LGA liable for any additional 1993 income taxes. The Court will not allow the IRS to amend its claim to include 1993 income taxes, or file a new claim for the 1993 tax year.

**Claim for Additional 1994 Income Taxes**

█ Of much greater economic significance is the request made by the IRS with respect to the 1994 income taxes. The IRS seeks the permission of this court to file a claim for just over $350,000, a seventy-fold increase from the amount of 1994 income tax liability listed on the Withdrawn Claim. As is to be expected, LGA strenuously objects.

A discussion of the facts in *Tanaka* is helpful in the case at bar. At issue in *Tana-*

*ka* were the debtor's unemployment taxes for taxable year 1990. The debtor had not filed the tax returns necessary for the determination of its 1990 unemployment taxes. The IRS timely filed a claim in the amount of $115,000.00 for those taxes based upon returns filed by the debtor for the 1989 tax year. This "original claim was *clearly* denoted as an 'estimate.'" *Tanaka,* 36 F.3d at 999 (emphasis added). After the debtor filed its 1990 tax returns, the IRS reviewed the same and filed an amended claim for the 1990 unemployment taxes in the amount of $471,-142.48, which was the amount of unemployment tax liability stated in the return. *Id.* at 998. The issue before the court in *Tanaka* was

> whether the IRS' original claim provided adequate notice as to the amount of the claim, or whether the increase in the amount of the amended proof of claim constitutes unfair surprise and prejudice to the estate or its creditors.

*Id.* As it considered the issue, the *Tanaka* court outlined five factors which should be considered when making the decision whether to allow amendment of a claim:

(1) Whether the parties or creditors relied on the IRS initial claim, or whether they had reason to know subsequent proofs of claim would follow pending the completion of the audit.

(2) Whether other creditors would receive a windfall to which they are not entitled by the Court not allowing this amendment to the IRS proof of claim.

(3) Whether the IRS intentionally or negligently delayed in filing its amended claim.

(4) The justification, if any, for the failure to request the timely extension of the bar date.

---

**3.** Some courts have likened the standards for amendment to a proof of claim to those for amendment of a complaint under Bankruptcy Rule 7015 and Federal Rule of Civil Procedure 15; i.e., in order to relate back to the date of the original claim (and therefore be considered timely), the amended claim must have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original [proof of claim]." Fed.R.Civ.P. 15(c) (West 1997); *Stavriotis,* 977 F.2d at 1206, n. 4.; *accord, In re.*

*Best Refrigerated Express, Inc.,* 192 B.R. 503, 505 (Bankr.D.Neb.1996) (applying Fed.R.Civ.P. 15); *see also In re AM Int'l, Inc.,* 67 B.R. 79, 82 (N.D.Ill.1986) (amendments to claims "scrutinized closely to ensure that the amendment is genuine rather than the assertion of an entirely new claim"). Although not directly based upon Fed.R.Civ.P. 15, the Tenth Circuit approach is consistent with those courts which rely upon the rule. *See Unioil, supra.*

(5) Any other general equitable consideration.

*Id.* at 998–999 (*citing In re Oasis Petroleum Corp.,* 130 B.R. 89, 91–92 (Bankr.C.D.Cal. 1991) applying equitable factors from *In re Miss Glamour Coat Co.,* No. 79 Civ. 2605, 1980 WL 1668, *4–5). The court considered the debtor to have sufficient notice of the potential amendment for the following reasons:

(1) the proof of claim was clearly identified as an estimate;

(2) the debtor's tax return had not been filed at the time the initial claim was filed;

(3) the trustee knew that the 1990 tax returns had not yet been filed; and

(4) the IRS promptly amended its claim once it received the debtor's delinquent tax return.

*Id.* On the basis of these facts, the court in *Tanaka* allowed the IRS to file an amended claim. Under the facts in *Tanaka,* amendment was proper; under the facts presently before this Court, it is not.

*1. Notice*

The first question to consider under *Tanaka* is whether LGA and/or the creditors herein had reason to know that the IRS would possibly amend the Withdrawn Claim. In both *Tanaka* and *Stavriotis,* a determinative factor was whether the original claim was clearly identified as an estimate. *Tanaka,* 36 F.3d at 999; *Stavriotis,* 977 F.2d at 1203. Under these cases, if insufficient notice of the possibility of amendment is given, then leave to amend should be denied; and if clear notice of the possibility of amendment is given, then leave to amend should be allowed. *Id.*

In the case at bar, there was no evidence that the IRS ever informed LGA or any other party of its intention to amend its claim prior to the filing of the Motion. The IRS argues in its post-trial brief that the language of the footnote gave sufficient notice of a possible seventy-fold amendment of the original claim. This Court, on the contrary, finds the original claim so vague as to give no notice of the amended claim. The language of the footnote was ambiguous. It only indi-

cates that an additional assessment either was or will be made. The IRS never denoted that the proof of claim was an estimate, but merely called it an unassessed liability. It is unclear whether the 1994 claim of $5,000 is the unassessed liability, or whether another unassessed. liability may be imposed in addition to the $5,000. There is no evidence that LGA had reason to know that a subsequent, much higher proof of claim would follow. This Court holds that it is incumbent upon to the IRS to clearly identify its "estimated" claims as estimates. *See Tanaka,* 36 F.3d at 999. The Court finds that the Withdrawn Claim does not put LGA or any creditor on notice that the claim for 1994 income taxes listed thereon constituted an estimate.

The *Stavriotis* facts closely parallel the facts here. In *Stavriotis,* the IRS, one month prior to the expiration of the deadline for filing proofs of claim, filed a claim for $11,132.93 for 1981 and 1984 income taxes. 977 F.2d at 1203. At the time the claim was filed, the IRS was in the process of an audit of the debtor. *Id.* At the conclusion of the audit, approximately five months after the claim deadline had passed, the IRS sought to amend its claim, seeking a claim of $2,435,-078.39 for 1981 income taxes, and $14,445.35 for additional income taxes for the 1982 taxable year. *Id.* Debtors objected, and the proposed IRS amendment was disallowed for the following reasons:

(1) the original claim was not designated as an estimate;

(2) the debtor had timely filed its tax returns;

(3) the amended proof of claim was based on an IRS audit, completely within IRS control;

(4) the increase in amount of the claim was 220 times the original amount; and

(5) the IRS, armed with knowledge of the bar date and its own continuing audit, never requested an extension.

*Id.* at 1204–1207. Each of the factors relied on by the court in *Stavriotis* is present in this case, and supports the decision of this Court not to allow the requested amendment.

■ The amount which the IRS now seeks to claim as unpaid 1994 income taxes is over

seventy times greater than the amount set forth in the Withdrawn Claim. Where amendment to claim is sought after the claim deadline has passed, "the second claim should not only be of the same nature as the first but also reasonably within the amount to which the first claim provided notice." *In re A.M. Int'l, Inc.*, 67 B.R. 79, 82 (N.D.Ill. 1986) (holding that a requested 1984 amendment for an additional amount in excess of $131,000 in sales and use taxes bore little resemblance to the original claim and was therefore disallowed) (citing *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1217–1218 (11th Cir.1985) (rejecting two amended claims of over $20,000,000, when the original claim was for $70,000)); *cf. In the Matter of Diversified Brokers Co., Inc.*, 355 F.Supp. 76 (E.D.Mo.1973); *In re ABC Welding Works, Inc.*, 68 F.Supp. 742 (S.D.N.Y.1946). This Court does not find that the filing of a $5,000 claim puts the debtor and creditors on notice that the claim may increase to over $350,000.

The IRS relies on *Tanaka* to support its argument that amendment should be allowed in this case. There the court held an increase of over $300,000 to be reasonable. The case at bar is clearly distinguishable from *Tanaka* for the following reasons:

(1) In *Tanaka*, the increase from the original claim to the amended claim was only four fold. 36 F.3d at 1000. Here, the increase is approximately seventy-fold, from $5,000 to over $350,000;

(2) In *Tanaka*, the IRS gave clear notice that its claim was an estimate. *Id.* at 999. It did not do so here;

(3) In *Tanaka*, the main cause for the inaccuracy of the initial claim lay at the hands of the debtor; the debtor had failed to file tax returns. *Id.* Here, returns for the operative years were timely filed, and the increase is the result of an IRS audit, the existence of which was apparently not disclosed; and

(4) In *Tanaka*, the amount of the amended claim was the exact amount of liability admitted by the debtor upon the filing of the delinquent 1990 tax. *Id.* at 997–998.

The IRS can find no solace in *Tanaka;* its underpinnings support the decision of this Court. In light of the failure of the IRS to clearly designate its claim as an estimate and a seventy-fold increase in the proposed amended claim matter, neither LGA nor its creditors had reasonable notice of the amended claim.

*2. Windfall to Other Creditors*

The second equitable factor to consider is whether other creditors would receive a windfall to which they are not entitled on the merits by not allowing the amendment. *Tanaka*, 36 F.3d at 998. This Court notes that, assuming that the priority claim would otherwise be valid, the denial of a priority claim will always create a "windfall" to the non-priority creditors. At least one court has found the windfall factor "to be inappropriate in deciding whether to permit the untimely amendment, for not only does such analysis involve undue speculation, it also does nothing to promote the legislative goal of finality." *In re Norris Grain Co.*, 81 B.R. 103, 108 (Bkrtcy.M.D.Fla.1987) *order aff'd. by In re Norris Grain Co.*, 131 B.R. 747 (M.D.Fla. 1990), *aff'd. by Norris Grain Co., Inc. v. U.S.*, 969 F.2d 1047 (11th Cir.1992); *see also Unroe*, 937 F.2d at 351 ("Late-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred."). On the facts before it, the Court assigns the 'windfall' factor little weight.

*3. Negligent Delay*

■ The third factor this Court must consider is whether the IRS intentionally or negligently delayed in filing its amended claim. A New York bankruptcy court, even though it ultimately granted the amendment of the claim requested by the IRS, indicated that generally the court is "reluctant to excuse a creditor whose tardiness in filing its proof of claim is the result of its own internal procedures." *In re Sage–Dey, Inc.*, 170 B.R. 46, 52 (Bankr.N.D.N.Y.1994). The language of the court in *Stavriotis* is most applicable and enlightening:

> Yet in this case there are two additional factors which persuade us that the bankruptcy court was not required to permit amendment of the government's claim.

First, the bankruptcy court made a factual finding' that although no plan was confirmed during the IRS' five month delay, its amendment would prejudice other creditors who had been given no notice of the IRS' ongoing audit and relied on the general amount of the claim listed in the original proof of claim. And second, *the government offered no excuse or justification for its delay in notifying the court and other creditors of its potential amendment. As the bankruptcy court noted, it would have taken minimal effort for the government to request an extension of the bar date or to notify the creditors and the court of its ongoing audit. The government had no excuse for its failure to give notice. It had enshrined its tardiness into official IRS policy.*

*Stavriotis,* 977 F.2d at 1205 (emphasis added).

Ms. Fryback testified that it is established IRS procedure not to file for extensions of the claims bar date. This Court concludes that the IRS intentionally, consistently with its internal operating procedures, chooses not to request an extension of the claims filing deadline. This Court cannot condone IRS policy not to file for an extension while conducting an audit. There is a simple solution for the IRS in future cases: seek an extension of the appropriate deadline and inform the court, the debtor and the creditors of the reason for the request.

### 4. *Justification*

The IRS states that it made a mistake in withdrawing the 1994 claim completely instead of merely amending it. The IRS claims that its delay was justified because "... of the need for the IRS to conduct an audit. Had debtor properly prepared its tax return the IRS could have timely provided its claim down to the penny." *Post–Hearing Brief of the IRS,* p. 4. This argument misses the mark. The record before the Court indicates that LGA timely filed it 1994 tax returns. There is no evidence that those returns were intentionally incorrect. The fact that the IRS disagrees with the tax returns and/or determines that an audit is necessary does not justify the failure to seek an exten-

sion of time in which to file a claim, or at a minimum, to place the Court and all parties in interest on sufficient notice that the original claim may be subject to significant amendment. As stated before, this Court, like the *Stavriotis* court, considers it incumbent upon the IRS to file for an extension of the bar date. *Stavriotis,* 977 F.2d at 1205. The IRS, having made its policy, must suffer its consequences.

### 5. *Other Equitable Considerations*

In the opinion of this Court, there are few if any equities which favor the IRS. The Tenth Circuit has clearly held that "[t]he court should not allow truly new claims to proceed under the guise of amendment." *Unioil,* 962 F.2d at 992. Allowance of the amendment requested by the IRS would be directly contrary to the *Unioil* decision, and should not be countenanced by this Court.

### New Late Claim for 1994

■ The IRS asked in the alternative to be allowed to file a new, late 1994 claim for over $350,000 pursuant to Bankr.R. 9006(b)(1). The Rule states:

*In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of the court, the court for cause shown ***may at any time in its discretion*** (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Bankr.R. 9006(b)(1) (West 1997) (emphasis added). Under this rule, a court may in its discretion excuse negligent delay so long as the neglect is "excusable."

The IRS relies on the ruling of the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993) (hereafter *"Pioneer"*). The Court believes that such

reliance is misplaced for several reasons. First of all, *Pioneer* is factually dissimilar from the case at bar. In *Pioneer*, the claim was sought to be filed 20 days after expiration of the claims deadline. 507 U.S. at 380, 113 S.Ct. at 1490. Here, the amendment of the claim was requested on June 30, 1997, **thirteen months** after the expiration of the claims deadline. In addition, a significant factor in *Pioneer* was the determination by the court that the notice of the deadline for filing claims was "hidden" in a notice of meeting of creditors form and was such as to create "a 'dramatic ambiguity' in the notification." 507 U.S. at 398, 113 S.Ct. at 1500. No such issue exists here. Finally, this Court notes that the *Tanaka* decision dealing with amendment of claims was issued after the Supreme Court's ruling in *Pioneer*. This Court assumes that the Tenth Circuit was fully aware of the *Pioneer* decision when it reaffirmed the legal principle that amendment is to be permitted when the "[original] claim provided adequate notice of the existence, nature and amount of the claim." *Tanaka*, 36 F.3d at 998. This Court has found as a matter of fact that a claim for $5,000.00 does not provide notice of an intent to hold a debtor liable for over $350,000.

In examining the concept of excusable neglect, the Supreme Court noted that the "requirement that the party's neglect ... be excusable[,] ... will deter creditors or other parties from freely ignoring court-ordered deadlines...." *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. The Supreme Court finds that the evaluation of whether neglect is an equitable one, and that courts may use one or more of the following factors in arriving at its decision:

(1) the danger of prejudice to the debtor;

(2) the length of delay and its potential impact on the judicial proceedings;

(3) the reason for the delay;

(4) whether it was within the reasonable control of the movant; and

(5) whether the movant acted in good faith.

*Id.* Contrary to the IRS' view of these factors, this Court finds that the equities do not favor the filing of their claim out of time.

The lapse of thirteen months between the expiration of a claims deadline and the submission of a proof of claim presents the danger of prejudice to a debtor and has a significant potential impact on the judicial proceedings. The only "evidence" offered by the IRS on this point was the fact that no plan has been filed or confirmed herein. The fact that a plan has not been offered or confirmed does not mean that there has been no significant activity in the case or that LGA and creditors have not relied on the Withdrawn Claim during the past thirteen months. The IRS, as the moving party, has the burden to present evidence regarding the issue of prejudice. *In re Carlton*, 72 B.R. 543, 546 (Bankr.E.D.N.Y.1987)(citing *In the Matter of Heyward*, 15 B.R. 629, 635 (Bankr. E.D.N.Y.1981)). The mere fact that a plan has not been confirmed is not sufficient.

The reason for the untimely request to file an amendment was the IRS' failure to obtain an extension of the bar date, an act which was entirely within the control of the IRS. In addition, it was within the reasonable control of the IRS to timely file a proof of claim which was clearly designated as an estimate. The IRS failed to do either of these things. The IRS claims that it acted in good faith when it inadvertently withdrew its claim completely. Assuming the same to be true, reinstatement of the Withdrawn Claim for 1994 income taxes in its original amount of $5,000.00, and no more, is the appropriate remedy.

Since the reinstatement of the claim in the amount of $5,000.00 is allowed in part under the theory of "excusable neglect," the Court believes that it is appropriate here to comment on the position of the IRS that the filing of the Notice and the failure to seek an extension of the claims bar date are to be grouped together as one large occurrence of "excusable neglect." They are separate and distinct events, and will be treated as such. Ms. Fryback testified that she was unaware of the audit at the time she authorized the filing of the Notice. The willingness of the Court to allow reinstatement of the Withdrawn Claim in the amount of $5,000.00 has no relation to its unwillingness to allow a seventy-fold amendment of that claim.

As stated by Rule 9006(b)(1) it is within the Court's discretion to extend deadlines. This Court is reluctant, absent weighty cause, to extend deadlines, especially after they have already expired. Such extensions hinder the effective administration of the case. This Court is also swayed by the fact that allowing the IRS to file an entirely new claim out time under the auspices of Bankruptcy Rule 9006 would be directly contrary to the principles expressed by our Court of Appeals in *Tanaka* and *Unioil,* and that of the Seventh Circuit in *Stavriotis;* i.e., that amendments to claims should relate to the original claim in order to be allowed. This Court agrees with the reasoning of the Seventh Circuit in *Stavriotis:*

> If the government had an unqualified right after the bar date to amend proofs of claim dramatically for any reason or for no reason at all, the bar date in bankruptcy proceedings would be meaningless. Under that view, every creditor could file grossly misleading proofs of claim and later amend those claims as of right at their leisure, whenever they decided to calculate the extent of actual debt claimed to be owed.

977 F.2d at 1206. The IRS should not be allowed to do indirectly what it may not do directly. Therefore, this Court will not allow the IRS to file a new late claim for 1994.

*Subordination*

Having not allowed the IRS to submit an amended claim, this Court need not reach the issue of whether the IRS claim, if allowed, should be subordinated under § 726. The reinstated claim for 1994 corporate income taxes in the amount of $5,000.00 will be treated as timely and will not be subordinated.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

### *JUDGMENT*

THIS MATTER comes before the Court pursuant to the United States of America acting through the Internal Revenue Service's ("IRS") Motion for Leave to Reinstate and amend the IRS' Erroneously Withdrawn Proof of Claim, or Alternatively, For Permission to File Late Claims. The issues having been duly heard and considered and a decision having been duly rendered, for the reasons set forth in the memorandum opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the IRS' Motion for Leave to Reinstate and amend the IRS' Erroneously Withdrawn Proof of Claim, or Alternatively, For Permission to File Late Claims be, and the same hereby is, granted in part and denied in part.

IT IS FURTHER ORDERED that the proof of claim filed by the IRS as Claim No. 3 is reinstated in the amount of $5,000.00, said amount representing the 1994 corporate income tax liability of Limited Gaming of America, Inc., Debtor herein, as set forth on said proof of claim.

IT IS FURTHER ORDERED that all other relief requested by the IRS in the Motion for Leave to Reinstate and amend the IRS' Erroneously Withdrawn Proof of Claim, or Alternatively, For Permission to File Late Claims be, and the same hereby is, denied.